IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

JENNIFER ELAINE LANIER,           )
                                  )
          Plaintiff,              )
                                  )        CIVIL ACTION FILE NO.
vs.                               )
                                  )        1:06-CV-0522-GET
DOUGLAS R. BESS, M.D.,            )
GEORGIA DEPARTMENT OF             )
CORRECTIONS, METRO STATE          )
PRISON, MHM CORRECTIONAL          )
SERVICES, INC. and GEORGIA        )
CORRECTIONAL HEALTHCARE,          )
                                  )
          Defendants.             )

## DEFENDANTS MHM AND BESS' REPLY BRIEF IN SUPPORT OF THEIR MOTION TO STRIKE THE TESTIMONY OF PLAINTIFF'S EXPERT MATTHEW NORMAN, M.D.

COME NOW MHM CORRECTIONAL SERVICES, INC. ("MHM") and

DOUGLAS R. BESS, M.D. ("Dr. Bess"), named defendants in the

above-captioned case, and herein file and serve their reply

brief in support of their motion to strike the testimony of

plaintiff's expert Matthew W. Norman, M.D. ("Dr. Norman"),

respectfully showing the Court as follows:

Defendants' motion to strike the testimony of Dr. Norman

encompasses two arguments: (1) Dr. Norman is not qualified under

Georgia law to render an expert opinion in this case; and (2)

even if Dr. Norman is qualified, his testimony that increased

medication dosage and combinations caused plaintiff to develop

Neuroleptic Malignant Syndrome ("NMS") is neither reliable nor relevant, as required by Daubert. Plaintiff's response, however, largely ignores the arguments in the motion to strike and, instead, primarily argues that Georgia's entire law governing the admissibility of expert testimony in civil cases, O.C.G.A. § 24-9-67.1, violates certain provisions of the Georgia Constitution.

As shown below, plaintiff still has failed to establish either: (1) that Dr. Norman is qualified to render an expert opinion in this case; or (2) that Dr. Norman's opinion on causation is both reliable and relevant. Moreover, plaintiff has failed to show that the only portion of § 24-9-67.1 relevant to this case is unconstitutional.

## A. As a Matter of Law, Dr. Norman Is Not Qualified To Testify Because He Does Not Have the Requisite Qualification or Experience

Plaintiff contends that, because Dr. Norman graduated from medical school in 1997, he was in the active practice of psychiatry for five years preceding Dr. Bess's Haldol prescription decisions in September through November 2002. However, this argument is not enough to satisfy the necessities of O.C.G.A. § 24-9-67.1(c). Instead, that law requires Dr. Norman to have been engaged in "the active practice of such area of specialty of his or her profession for at least three of the

last five years" preceding the "act or omission alleged to have occurred." O.C.G.A. § 24-9-67.1(c),(c)(2)(A); See <u>McDowell v. Brown</u>, 392 F.3d 1283, 1295 (11th Cir. 2004) [applying applicable Georgia law on expert competency in federal suit containing state medical malpractice claims]; <u>Dukes v. Georgia</u>, 428 F.Supp.2d 1298, 1311, 1313 (N.D. Ga. 2006) [applying O.C.G.A. § 24-9-67.1(c) in federal suit containing state medical malpractice claims].

Plaintiff offers no support for her proposition that Dr. Norman was engaged in "active practice" when he graduated from medical school in 1997. No one disputes that, after Dr. Norman graduated from medical school in 1997, he entered a four-year residency until 2001 and then embarked upon a fellowship until 2002. (<u>See</u> Norman depo., Exhibit 1 at 2). However, even Dr. Norman himself correctly lists the time he spent in residency and fellowship as "Education/Postgraduate Training." <u>Id.</u>; <u>Taber's Cyclopedic Medical Dictionary</u>, 1583 (Clayton L. Thomas, M.D., M.P.H., 16th ed. 1989) [defining "residency" as "[a] period of at least one year and often 3 to 4 years of on-the-job training, usually postgraduate, that is part of the formal educational program for health care professionals"]. Dr. Norman, thus, did not enter active medical practice until July 2002, a mere two months before the beginning of the acts giving

rise to this lawsuit. (Norman depo. at 11-12); (Norman depo. at Exh. 1 at 1). Dr. Norman's experience of two months' active practice falls far short of the statutory requirement that he be engaged in active practice for three of the last five years preceding Dr. Bess's alleged negligent treatment. O.C.G.A. § 24-9-67.1(c)(2)(A).

Additionally, Dr. Norman does not have frequent enough experience diagnosing and treating NMS to be considered an expert in this field. O.C.G.A. § 24-9-67.1(c)(2)(A) [requiring that proffered expert have "sufficient frequency to establish an appropriate level of knowledge, as determined by the judge, in performing the procedure, diagnosing the condition, or rendering the treatment which is alleged to have been performed or rendered negligently by the defendant whose conduct is at issue"]. Dr. Norman, during his residency, diagnosed only about five persons with NMS, and he has not treated any persons with NMS since his residency. (Norman depo. at 12, 14). Further, Dr. Norman has not published or lectured on NMS. (Id. at 12).

Dr. Norman's qualifications fall far short of what Georgia law requires for an expert witness in a professional malpractice case. For this reason, the Court should strike his testimony in its entirety.

**B.** **Under _Daubert_, Dr. Norman's Opinions Fail Both the Reliability and Relevancy Requirements**

Even if the Court assumes (which defendants emphatically deny) that Dr. Norman is competent under Georgia law to render expert testimony, his testimony on what exactly Dr. Bess did to cause plaintiff to develop NMS is neither reliable nor relevant, in contravention of Fed.R.Evid. 702, as explained by Daubert v. Merrell Dow Pharm., Inc., 509 U.S. 579, 113 S.Ct. 2786 (1993)[1].

Plaintiff offers scant argument on why the Court should consider relevant and reliable Dr. Norman's causation testimony, which boils down to "the greater the dosage of Haldol, the greater the risk of developing NMS." (Norman depo. at 34, 88-89, 95). Mostly, plaintiff contends that this Court should not rely on the factors that Daubert suggested form the basis of determining the reliability of an expert's opinion. Daubert, 509 U.S. at 593-94, 113 S.Ct. at 2796-97 [instructing that courts should look at things like: (1) whether the expert's

---

[1] Defendants note that plaintiff asserts that Dr. Norman possesses "technical and specialized knowledge in the field of mechanical engineering . . . that will assist the jury in understanding the evidence to be presented." (Plaintiff's response at 47). Defendants assume that plaintiffs merely have erred in identifying Dr. Norman's purported area of expertise. To the extent that plaintiff claims, however, that Dr. Norman is an expert in mechanical engineering or that testimony in this area somehow would assist the jury in resolving a medical malpractice claim, defendants respond that such evidence is irrelevant.

theory can be and has been tested; (2) whether the theory has been subjected to peer review and publication; (3) the known or potential rate of error of the particular scientific technique; and (4) whether the technique is generally accepted in the scientific community].

Plaintiff's strategy of encouraging this Court to ignore the <u>Daubert</u> factors is not surprising, since Dr. Norman's causation opinion would clearly fail as it is based only: (1) on his review of a couple of unidentified articles by unknown persons in an area of admitted medical controversy; and (2) on his own limited experience in treating less than five cases of NMS. (Norman depo. at 14, 34-35). In other words, Dr. Norman offered no explanation at all about the underpinnings of his causation opinion. Plaintiff, further, fails to identify what particular additional factors the Court should examine under <u>Daubert</u> after ignoring the ones urged by the Supreme Court.

Instead, plaintiff maintains that the Court should accept Dr. Norman's causation opinion at face value just because Dr. Norman based his opinion on vagaries like "his experience and training in the field of psychiatry" and "medical principles generally accepted in his field." (Plaintiff's response at 49)[2].

_____

[2] Plaintiff's reliance on an unpublished case from another Circuit, <u>Humphries v. Mack Trucks, Inc.</u>, 198 F.3d 236 (4th Cir.

What plaintiff fails to do, however, is inform the Court about which generally accepted principles or methodology Dr. Norman relied upon in making his causation opinion. This lack of specifics on the basis for his causation opinion does not come close to supplying the Court with the information it needs to assess "whether the reasoning or methodology underlying the testimony is scientifically valid and . . . whether that reasoning or methodology properly can be applied to the facts in issue." United States v. Frazier, 387 F.3d 1244, 1261-62 (11th Cir. 2004) (*en banc*), quoting Daubert, 509 U.S. at 592-93, 113 S.Ct. at 2796, cert. denied, 544 U.S. 1063 (2005).

To the contrary, Dr. Norman's testimony supports defendants' argument by admitting: (1) that controversy exists on whether NMS is related to a particular dose of neuroleptic; (2) that NMS has not been related to a particular dosage of drug; (3) that he could not ascertain the particular dosage of Haldol that allegedly caused plaintiff to develop NMS; and (4) that he was unsure of the exact date when plaintiff developed NMS. (Norman depo. at 31, 34, 88-90); (2004 Norman depo. at 91).

---

1999)(table), is unpersuasive, especially since plaintiff failed to alert the Court that this case was unpublished, and thus of dubious precedential value. Moreover, the cases cited in Humphries suggests that the expert in Humphries-unlike Dr. Norman-had cited specific published authorities to support his opinion. Id.

Moreover, in a deposition in a prior case, <u>Johnson v. MHM et al.</u>, Dr. Norman admitted that NMS has not been related to a particular dosage of drugs. (2004 Norman depo. at 91).

Further, plaintiff casts a red herring into the Court's net by mentioning Dr. Norman's opinion that Dr. Bess allegedly failed to follow appropriate standards of care in obtaining plaintiff's consent. (Plaintiff's response at 48-51). Whether or not Dr. Bess fell below the appropriate standard of care in obtaining plaintiff's consent is wholly irrelevant to whether the increased dosages and combinations of Haldol caused plaintiff to develop NMS.

In effect, Plaintiff asks the court to abandon its role as "gatekeeper" of scientific expert testimony. <u>McClain v. Metabolife Intern., Inc.</u>, 401 F.3d 1233, 1237 (11th Cir. 2005). The record shows that, at best, Dr. Norman based his NMS causation theory only on the contents of some unidentified articles about an unsettled medical issue and on his limited experience in treating NMS patients. Dr. Norman did not have sufficient data or information in order to form a reliable opinion on how Dr. Bess prescription of increasing dosages of Haldol decanoate somehow caused plaintiff to develop NMS. Dr. Norman's vague causation opinion of "the greater the dosage, the greater the risk" is exactly the sort of "speculative and

unreliable opinion" that <u>Daubert</u> requires a trial court to weed out. <u>McClain</u>, 401 F.3d at 1237.

Therefore, even if the Court determines that under Georgia law Dr. Norman is qualified to render an expert opinion, this Court still should strike, as unreliable and irrelevant under Rule 702, those portions of his opinion stating that plaintiff's NMS was caused by increased dosages and combinations of Haldol.

## C. The Relevant Portions O.C.G.A. § 24-9-67.1 Are Constitutional

Plaintiff's lengthy argument urging this Court to strike down O.C.G.A. § 24-9-67.1 in its entirety as violative of the Georgia Constitution contains little that is germane to this case and much that is not. At the outset, defendants are confused as to why, in this case in federal district court, which applies the Federal Rules of Evidence and federal case law interpreting these rules, plaintiff has chosen to challenge inapplicable portions of a state evidentiary statute on state constitutional grounds.

As stated above, when determining the competency of an expert witness in a federal case involving state medical malpractice claims, like this one, a federal court is to apply the state law competency standard. <u>See</u> <u>McDowell</u>, 392 F.3d at

1295; Dukes, 428 F.Supp.2d at 1311, 1313.  Here, O.C.G.A. § 24-9-67.1(c) supplies the appropriate competency standard.

Plaintiff's arguments, however, primarily are directed at § 24-9-67.1(f), which is a statement of the legislature's intent in enacting § 24-9-67.1, but is not a competency standard[3]. Thus, subsection (f) simply does not govern the Court's determination on expert witness competency and is not relevant to this case.  Moreover, plaintiff's arguments largely are based on taking single sentences or phrases out of the context in which they were written, or even worse, by failing to identify other portions of the statute that refute her arguments. Defendants, though, will attempt to respond to those portions of plaintiff's arguments that are even arguably relevant to their motion to strike.

---

[3] O.C.G.A. § 24-9-67.1(f) reads:

> It is the intent of the legislature that, in all civil cases, the courts of the State of Georgia not be viewed as open to expert evidence that would not be admissible in other states. Therefore, in interpreting and applying this Code section, the courts of this state may draw from the opinions of the United States Supreme Court in Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993); General Electric Co. v. Joiner, 522 U.S. 136 (1997); Kumho Tire Co. Ltd. v. Carmichael, 526 U.S. 137 (1999); and other cases in federal courts applying the standards announced by the United States Supreme Court in these cases.

**1. Application of § 24-9-67.1(c) in this case does not result in an unconstitutional delegation of legislative power**

Plaintiff's first argument is that O.C.G.A. § 24-9-67.1(f) is an unconstitutional delegation of legislative power because it <u>requires</u> Georgia courts to ascertain and follow every other states' rules on the admissibility of expert testimony, especially if another state has a "harsher" rule governing the admission of such evidence. (Plaintiff's response at 11-16). First, subsection (f), which fleshes out the Georgia legislature's intent and allows Georgia courts to apply <u>Daubert</u>-related federal case law, has no application to this federal court case. As stated above, although subsection (f) is part of § 24-9-67.1, it does not set out the competency standard relevant to this case. Rather, subsection (c) supplies the appropriate competency standard. Additionally, this Court already applies federal rules of evidence and binding federal case law interpreting these rules. The Court does not need a Georgia statute to so instruct it. Plaintiff's challenges to subsection (f), therefore, are irrelevant to this case.

Second, subsection (f) does not on its face require Georgia courts to do what plaintiff contends. The first sentence, at most, expresses the legislature's intent about how it wishes persons to view Georgia courts. It contains no mandatory

language requiring Georgia courts to audit other states'
evidentiary rules. Further, since § 24-9-67.1 borrows much of
the language contained in the federal rules of evidence
governing the admissibility of expert testimony, Fed.R.Evid. 702
& 703, the second sentence of subsection (f) sensibly allows
Georgia courts to use existing United States Supreme Court and
other federal case law to interpret the new rule on the
admissibility of expert evidence.

### 2. Section 24-9-67.1(c) is not unconstitutionally vague as applied in this case

Plaintiff's next contention, that O.C.G.A. § 24-9-67.1
violates her state constitutional due process rights because it
is confusing and vague, is irrelevant to this case, and
plaintiff ignores the rest of the statute. (Plaintiff's
response at 16-24). Again plaintiff relies on subsection (f),
the expression of legislative intent, which simply does not
apply to this federal case and, regardless, contains no
mandatory directives to the Georgia courts. Perhaps plaintiff's
argument would be more persuasive if it did not ignore the only
subsection of § 24-9-67.1 applicable to this case, (c), which is
anything if not detailed in its requirements. O.C.G.A. § 24-9-
67.1(c).

Plaintiff additionally claims that, under subsection (f),
Georgia litigants will be set further adrift because they also
must constantly refer to federal court decisions interpreting
Daubert.  Plaintiff even appears to challenge the Daubert
decision itself as the cause of all this purported legislative
confusion, based on the unremarkable observation that different
federal courts facing different fact situations involving
different opinions of different experts have issued opinions
that sometimes admit and sometimes exclude expert testimony.
(Plaintiff's response at 19-21).  As the Court is no doubt
aware, Daubert remains binding upon all federal courts until the
U.S. Supreme Court sees fit to overrule itself.  Motorcity of
Jacksonville, Ltd. v. Southeast Bank N.A., 120 F.3d 1140, 1143
(11th Cir. 1997).  Whether or not the Georgia legislature has
instructed Georgia courts to borrow the principles set out by
the Supreme Court in Daubert, Kumho Tire, and Joiner simply is
irrelevant to the rules, statutes, and case law that this Court
already applies.

Plaintiff then makes the patently untrue argument that the
abuse-of-discretion standard that an appellate court applies
when reviewing a trial court's decision on the admissibility of
expert testimony under Daubert somehow equates to the appellate
court always affirming the trial court's decision.  (Plaintiff's

response at 22).  <u>United States v. Brown</u>, 415 F.3d 1257, 1266

(11th Cir. 2005) [stating that "review under an abuse of

discretion standard does entail review, and granting

considerable leeway is not the same thing as abdicating

appellate responsibility. [The Court of Appeals] will reverse

when the district court's <u>Daubert</u> ruling does amount to an abuse

of discretion that affected the outcome of a trial"], <u>cert.</u>

<u>denied</u>, ___ U.S. ___, 126 S.Ct. 1570 (2006).

Plaintiff's next claim, that § 24-9-67.1(a) and (b)(1)

provide internally contradictory explanations of the sorts of

information on which an expert may base his testimony, also is

irrelevant to this case.  As mentioned above, subsection (c)

supplies the appropriate witness competency standard in this

case.  Moreover, plaintiff's challenge is based on § 24-9-67.1's

apparent incorporation of language from Fed.R.Evid. 702 and 703.

However, after this Court decides the competency matter, it will

apply the actual Federal Rules of Evidence in determining the

ultimate admissibility of expert witness testimony, not state

law provisions purporting to govern the same issue.  <u>McDowell</u>,

392 F.3d at 1295[4].  Therefore, plaintiff's argument is without

merit.

---

[4] Plaintiff also mentions that two Georgia state trial courts
apparently have concluded that 24-9-67.1 is unconstitutional for

**3. <u>Application of § 24-9-67.1(c) does not violate plaintiff's right to trial by jury</u>**

Plaintiff argues next that § 24-9-67.1 violates her state constitutional right to trial by jury because Georgia's adoption of a <u>Daubert</u>-based evidentiary standard usurps the jury's role as fact finder. (Plaintiff's response at 25-29). In essence, plaintiff argues that, because juries may decide the weight and credibility to assign to an expert's opinion, the opinion of every expert that a plaintiff proffers should reach a jury. Plaintiff again ignores that in federal court, Fed.R.Evid. 702, 703, and <u>Daubert</u>-related case law apply, not the corresponding provisions of § 24-9-67.1. The only provision of § 24-9-67.1 that this Court applies is subsection (c), which governs witness competency standards. <u>See McDowell</u>, 392 F.3d at 1295; <u>Dukes</u>, 428 F.Supp.2d at 1311, 1313.

As the Eleventh Circuit explained, "[o]nce a plaintiff has met the burden of producing a competent expert, a district court still must engage in a Rule 702 analysis, since the state law is directed at establishing a substantive issue in the case, while the gatekeeping structure of Rule 702 is designed to ensure fair administration of the case." <u>McDowell</u>, 392 F.3d at 1295

---

some reason. Even ignoring the non-binding effect of the decision of a state trial court on a federal district court, plaintiff fails to explain the reasoning of these courts.

(internal quotation marks and citation omitted). Plaintiff has
presented no argument that Rule 702 is unconstitutional, and she
has not explained how the application of subsection (c) somehow
implicates her right to a trial by jury. The application of
subsection (c), at most, determines what sorts of persons will
be qualified as experts in certain civil cases.

### 4. Application of § 24-9-67.1(c) in this case does not violate plaintiff's state constitutional equal protection rights

Plaintiff's next argument is that § 24-9-67.1 violates her
state constitutional equal protection rights because it creates
different evidentiary standards for different types of cases.
(Plaintiff's response at 29-36). She claims that the Court
should apply a "strict scrutiny" test because § 24-9-67.1
directly impacts the fundamental right to a trial by jury and
because the state has not proffered a compelling state interest
to support the statute.

Again, the only portion of § 24-9-67.1 that applies in this
federal case is subsection (c), the expert witness competency
standard. To the extent that plaintiff raises equal protection
arguments based on other subsections or sections, these
arguments are not relevant. Further, plaintiff has not
explained how the application of subsection (c), a statute about
expert witness competency, implicates her right to a trial by

jury, and therefore why it must be subject to "strict scrutiny."
Gary v. City of Warner Robins, Ga., 311 F.3d 1334, 1337 (11th
Cir. 2002) [in case alleging federal equal protection violation,
noting that "strict scrutiny" applies only to laws that involve
fundamental rights or suspect classes].

Plaintiff fares no better in arguing that § 24-9-67.1(c)
does not even pass the "rational basis" test.  The rational
basis test requires that a law be rationally related to the
achievement of a legitimate government purpose.  Gary, 311 F.3d
at 1338-39.  Courts applying the rational basis test give "great
deference to economic and social legislation." Id. In enacting
§ 24-9-67.1 and other laws, the Georgia legislature explained:

> The General Assembly finds that there
> presently exists a crisis affecting the
> provision and quality of health care
> services in this state. Hospitals and other
> health care providers in this state are
> having increasing difficulty in locating
> liability insurance and, when such hospitals
> and providers are able to locate such
> insurance, the insurance is extremely
> costly. The result of this crisis is the
> potential for a diminution of the
> availability of access to health care
> services and a resulting adverse impact on
> the health and well-being of the citizens of
> this state. The General Assembly further
> finds that certain civil justice and health
> care regulatory reforms as provided in this
> Act will promote predictability and
> improvement in the provision of quality
> health care services and the resolution of
> health care liability claims and will

thereby assist in promoting the provision of
health care liability insurance by insurance
providers. The General Assembly further
finds that certain needed reforms affect not
only health care liability claims but also
other civil actions and accordingly provides
such general reforms in this Act.

Georgia Laws 2005, Act I § 1.

Certainly, a rule setting out competency requirements for

expert witnesses in medical malpractice cases is rationally

related to the legitimate state purpose of promoting

predictability in the resolution of health care liability

claims. Plaintiff has presented no evidence that the

application of different competency standards for experts in

different cases "is so unrelated to the achievement of any

combination of legitimate purposes that [the Court] can only

conclude that the legislature's actions were irrational." Gary,

311 F.3d at 1339 (quotation marks and citations omitted).

### 5. Application of § 24-9-67.1(c) here does not violate Georgia's prohibition on retroactive laws

Plaintiff also asserts that § 24-9-67.1 violates the

Georgia constitution's provision against retroactive laws

because the legislature stated that § 24-9-67.1 is to apply to

all causes of action pending on its effective date, February 16,

2005, and she maintains that her rights as a litigant "vested"

in 2002, the time of her injury. (Plaintiff's response at 36-

44). At least one court in this district, however, already has determined that § 24-9-67.1(c) applies to all cases pending on February 16, 2005. Dukes, 428 F.Supp.2d at 1312. Again, to the extent that plaintiff challenges portions of § 24-9-67.1 other than subsection (c), these claims are irrelevant.

Moreover, Plaintiff's argument that she would be prejudiced by the retroactive application of subsection (c) loses its force when one remembers that she refiled this suit in February 2006, about one year after § 24-9-67.1 was signed into law. (See Complaint at 16). In addition, plaintiff fails in her contention that her right of access to the courts has been violated by the "retroactive" application of O.C.G.A. § 24-9-67.1(c). While the application of O.C.G.A. § 24-9-67.1(c) changed the requirements on the sorts of persons who will be qualified as experts in medical malpractice actions, Dukes, 428 F.Supp.2d at 1311, it did not and has not deprived plaintiff of her ability to bring this lawsuit.

For the foregoing reasons, and for the reasons set forth in their Motion to Strike, defendants Bess and MHM respectfully request that the Court exclude the testimony of Dr. Norman.

This 24th day of August, 2006.

**CRUSER & MITCHELL, LLP**


s/Michael D. Hoffer____
Deana Simon Johnson
Georgia Bar No. 646925
Michael D. Hoffer
Georgia Bar No. 359493
Counsel for defendants MHM and
Bess

Peachtree Ridge, Suite 750
3500 Parkway Lane
Norcross, GA 30092
(404) 881-2622 (Telephone)
(404) 881-2530 (Facsimile)

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that I have this day electronically filed **DEFENDANTS MHM AND BESS' REPLY BRIEF IN SUPPORT OF THEIR MOTION TO STRIKE THE TESTIMONY OF PLAINTIFF'S EXPERT MATTHEW NORMAN, M.D.** with the Clerk of Court using the CM/ECF system which will automatically send e-mail notification of such filing to the following attorney of record:

Adrienne P. Hobbs          Dave Stubins
Scott Halperin             Department of Law
Hobbs & Halperin           40 Capitol Square
235 Peachtree Street       Atlanta, GA 30334
#400
Atlanta, GA 30303

This 24th day of August, 2006.

                          **CRUSER & MITCHELL, LLP**


                          s/Michael D. Hoffer___
                          Deana Simon Johnson
                          Michael D. Hoffer